Case No. 24-51-11. Former Lyle Jolley, ad valens, v. Unknown Named BOP Directors, ad BOP Director from 2017 to present, individually and in official capacity, et al. Ms. Alexeyeva, amicus curiae, predi ad valens, Mr. Sempat, predia polis. Good morning, Ms. Alexeyeva. Good morning, Judge Wilkins. May it please the Court. Christine Alexeyeva, appointed counsel on behalf of Mr. Jolley. I'd like to reserve three minutes for rebuttal. Mr. Jolley's complaint tells a Kafkaesque story. He was designated a member of the Aryan Brotherhood without any evidence, notice, or opportunity to respond. Based on that designation, a year later, and largely nothing else, he was accused of facilitating a racial war. He received a perfunctory hearing where the only concrete charge against him was again that he was an Aryan Brotherhood member, and his appeal was shuffled between different BOP offices without ever getting a merits review. Now the upshot of all of that is that Mr. Jolley has been caged in a cell half the size of a parking spot for more than four years, and he has 20 years more to go. The government argues that Mr. Jolley's complaint should be dismissed for failure to plead sufficient facts, even as Mr. Jolley has explained that the BOP has refused to release the records to him. The court should reverse the district court's decision on the Fifth and Eighth Amendment claims and allow them to proceed. On your Fifth Amendment claim, you're suggesting that in the allegations, he was told before the hearing that it was only procedural that this would happen, and that he also felt that this was preordained. Any other particular allegations that kind of meet that particular outcome to suggest that he was not appropriately given due process? Yes, Your Honor. Well, Mr. Jolley's contention really boils down to the notice that he received itself. If you take a look at the Appendix 55, besides the fact that he was accused of being an Aryan Brotherhood member, all the other charges are exceedingly vague. Willing participant, possessed direct knowledge, assisted in the facilitation, significant threat. No one can effectively defend themselves against such a vague charge. What was needed instead was a concrete... You don't think being a member of the Aryan Brotherhood would suffice to segregate him? A couple things, Your Honor. First of all, Mr. Jolley alleges that he never actually received any process when he was designated the Aryan member to begin with, because he was given no notice at all, even though the BOP requires there to be some sort of... He got notice that that was the basis on which BOP was thinking of sending him to the supermax, and he had at least an informal hearing and an opportunity to rebut that charge. Yes, Your Honor, but he never received the factual basis of the charge that he was an Aryan Brotherhood member. So, for example, what was needed is something like an allegation of a meeting that he attended, where the Aryan Brotherhood discussed the facilitation of this supposed racial war. Like a bill of particulars and an indictment? Not at all, Your Honor, but just something factually specific to him, and that is what the Supreme Court said in Wolf. It said, advance written notice with evidence relied upon and the for the disciplinary action. That is the minimum requirement of due process, is what the Supreme Court said, and the reason is because, quote, the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are in fact. And this is why, Your Honor, my friend on the other side refers to such a meeting in their briefing, and I understand that would be helpful to them if something that concrete was actually in the notice. Of course, the problem is that the basis for referral contains no such charge. In fact, the basis for referral essentially copy-pastes the regulatory criteria that the BOP itself sets for the transfer to Florence. Consider what I just read to you and compare that to the regulatory criteria on Appendix 54. Placement is appropriate where a prisoner has been identified as participating in, organizing, or facilitating any group misconduct that adversely affected the orderly operation of a correctional facility. That's essentially the same thing copy-pasted, added an Aryan Brotherhood label on that. It cannot be that that alone is sufficient to send someone off to solitary confinement for 25 years, and couple that, of course, with the lack of any meaningful appeal in this case, Your Honor. It might be that if the original pre-deprivation hearing was lacking, that the appeal or the post-deprivation review could make up for that fact. But the problem is that Mr. Jolly's allegations here, supported very well by the record, is that the appeal was just shuffled between the different levels of the BOP, and he never got a merits review. You know, you, of course, challenge his status as a member of the Aryan Gang, but really you're more concerned about the fact that he's in solitary confinement. Absolutely, Your Honor. We are not challenging declassification just for the sake of classification, and we agree that there is case law that says there is no due process interest just in declassification, and we're not at all asking the court to pass any kind of substantive judgment on what would be enough to send someone to Florence. The only point here is that the process that Mr. Jolly received doesn't meet even the most fundamental building block of due process, which is particularized notice. Even the BOP regulations themselves, with regard to notice, say prisoners will be afforded, quote, a written summary of the specific behavior, which forms the basis for the placement recommendation. This is at Appendix 55. So the BOP itself even recognized that what is needed here, allegation of a specific behavior, and yet it did not- But your argument isn't that violation of that regulation in and of itself violates due process? That's absolutely right, Your Honor. Our argument is under the Constitution, but the BOP regulations are, of course, relevant if the court chooses to look at the Matthews test, because this is essentially a recognition from the BOP that these procedures are not burdensome in that context, and these should be provided. Is your argument that it violates due process to not get the notice, the specific notice, pre-deprivation? So in other words, if we read the complaint as saying, oh, the only notice he got specifically was that he was a member of the Aryan Brotherhood prior, but once he objects during the subsequent review process, at that time he is told of the specific reason that the Bureau believes that he is a member, would that suffice for due process purposes? There is no court that has set a specific floor on what due process requires in the prison context, but we think that that would certainly go a long way towards satisfying due process, because there must be at some point at least an opportunity to really contest the charges. And the Supreme Court in Wilkinson made that point, that the problem with not receiving an initial particularized notice initially is that then you don't really have an opportunity to object on appeal. So that's what the Supreme Court said at 545 U.S. 226. A particularized notice provides basis for objection and allows for meaningful post-deprivation review, because if you don't know what you were charged with initially, there is no way that you can effectively represent yourself in post-deprivation review either. So we do think that they're connected, Your Honor, but we also think that, yes, it could be remedied to some degree. Here, the court doesn't even need to reach that hypothetical, because there was just nothing at no level of review. If I could pivot to the Eighth Amendment, given the time. The question under the Eighth Amendment is whether conditions pose a substantial risk of serious harm. Now, the First, the Second, the Third, the Fourth Circuits have all recognized that long-term isolation can constitute cruel and unusual punishment under the test. And that was one of the findings that was not made by the district court to constitute. That's exactly right, because this case comes to the court at a motion to dismiss. And all the cases that we're talking about, even the Reza case that my friend on the other side brings up, all of those were decided on summary judgment. There is no court that they've pointed to that has dismissed a claim like this at this early litigation stage. And it's not just the conditions of confinement that are so severe here, but the Eighth Amendment, of course, has this proportionality component, right? So Mr. Jolly is not asking this court to say all solitary confinement in all supermax prisons is unconstitutional. He's making an as-applied narrow claim. And it might well be that there is sufficient penological interest to hold someone else in solitary confinement, like the terrorists in Rezac, if the government can explain adequately why they can't be held safely in any other prison. And the way you're arguing the case by suggesting that all these other circuits have looked at basically the science of, you know, psychological science with respect to long-term confinement, you are not closing off that in a particular case that may not be the case. You're leaving it open to suggest a case-by-case remedy? Absolutely, Your Honor. So there's a—may I answer the question? Yes. So the first component is whether there is this risk of harm. So there's obviously an individualized examination of the actual prisoner. However, some courts have gone further. And said that because the question is the risk that the harm will occur. And here, for example, Mr. Jolly faces 20 more years, right? He's looking for injunctive relief. He's not looking for damages, looking backwards. So that would be enough in itself to establish the risk, we think. But, of course, the court can also have a more narrow holding, you know, directing Mr. Jolly to come up with specific evidence on summary judgment. And then how do you respond with respect to how the district court used the Erev case? Because I feel like it's factually distinguishable. So the Erev case was about the procedural due process. And the Erev case supports Mr. Jolly 100 percent, Your Honor. I mean, there, the court found a liberty interest, even though the conditions of confinement were, quote, significantly less—caused significantly less deprivation than the conditions here, right? Inmates were allowed in common spaces for 16 hours a day, educational and professional opportunities. They had no restrictions on exercise relative to general population. And still, the court found a protected liberty interest because the conditions were indefinite and they were atypical. Quote, only a handful are placed under these restrictions. And, of course, Mr. Jolly easily clears that bar. His confinement is indefinite. And Florence holds less than 400 prisoners. So it is definitely an atypical placement. And on top of that, the conditions that he alleges are far, far more horrific. This case is here on a motion to dismiss, but there were other documents attached to the complaint and discussed, essentially, even in the allegations. So I want to make sure, are we still on a motion to dismiss, or has this somehow converted to summary judgment? No, Your Honor. We are on the motion to dismiss. The documents that Mr. Jolly attaches are just a few little excerpts from the prison records to support his allegations of the fact that he did not receive due process. And as he alleges again and again, he has asked for more documents, and the BOP has refused to release even his own medical records to him. So this case would be, it would be a very premature decision to dismiss it at this stage. And is it clear that the district court did not convert the case to summary judgment? Absolutely, Your Honor. The court said it was ruling on a motion to dismiss. Mr. Jolly even asked for discovery, and the court specifically denied that because it said it was considering a motion to dismiss in this case. All right. We'll give you some time on rebuttal. Thank you, Your Honor. Good morning, Mr. Sampat. Good morning, Your Honors. May it please the court? Truman Sampat on behalf of the appellees. The court should affirm the district court's dismissal on all grounds. Mr. Jolly failed to sufficiently allege violations of law in the various claims he brought before the district court, and dismissal was appropriate. Unless the court has any objections, I was going to start exactly where my friend did on the other side with the Fifth Amendment claim, and then we'll work our way through it. Starting with the Fifth Amendment claim, Mr. Jolly does not have a liberty interest based on his classification and his transfer to ADX Florence. The Tenth Circuit has said this in Rizak, and that should apply here. It is. I just want to be very clear that we're not— How do you square that, though, with ARIF? So— You're right about the Tenth Circuit, but—and it's a little odd that we're overruling them on a prison in their jurisdiction, but, I mean, we have to apply our precedent. I don't dispute that, Your Honor. But what I'm saying is that even under the ARIF test, there's a protected liberty—there's no protected liberty interest, and if nothing else, it's a matter of—it's almost like a comedy-esque argument of deferring to the Tenth Circuit. Why not, though? I mean— So—I'm sorry, Your Honor. The conditions in ARIF seem less austere than the Supermax conditions here. So I— We found a liberty interest. Yeah, so I think it's important to note in ARIF that the court there found it a close call on a liberty—on a protected interest, but it wasn't the conditions of confinement that tipped the scale one way or another. It was the last—it was the last two prongs of the ARIF test, which are the duration of confinement generally and the duration relative to the length of administrative segregation routinely imposed on prisoners serving similar sentences. So turning on—talking about the duration of confinement generally, the court in ARIF said it was confirmed—concerned about the indefinite CMU designation, and that follows straight from Wilkinson. However, ADX Florence doesn't have—it's not indefinite because there are periodic reviews. That is—those reviews are available. Mr. Jolly has those reviews available to him, and he does not allege that his sentence is being extended one way or another given his time in ADX Florence. On the duration of—the duration relative to the length of administrative segregation with those imposing similar sentences, Mr. Jolly concedes in his complaint, and with the exhibits that were attached there, too, that other members of the Aryan Brotherhood were also transferred there and are serving similar sentences. He must allege more. That's the point. Sorry, back to duration. I thought the frequency of review was every six months in both cases, no? I thought—I read ARIF to say that its main concern on the duration was that it was indefinite, but if there was— Indefinite, but in a circumstance where that scheme allowed review every six months, I could be wrong about that. I could be wrong as well, Your Honor. I thought it was that, but I think— I'll make it up. But even if this court wanted to not wade into the muddy waters of creating an issue with the Tenth Circuit, Mr. Jolly's complaint and the exhibits—sorry, the exhibits attached confirmed that he received a process. He was provided notice of a hearing. He was able to attend that hearing. He was able to put on evidence. He chose not to, and that's all due process requires. But if you don't know what you're shooting at, so to speak, how can you defend yourself? I mean, if all you're told is, we believe you're a member of the Aryan Brotherhood, it's because you attended a meeting, it's because you did whatever it is, how is one to defend against that? So I think there are ways to defend against it. I mean, he was provided notice that before the hearing that it was because of his membership in the Aryan Brotherhood that he was being transferred. He certainly alleges in his complaint that he had knowledge about the cup that was found in his cell. I know there's a dispute as to whether it was his or not. However, right, the Supreme Court has said all that's required is some evidence, and the cup by itself could be enough. But at the end of the day, he does have an ability to challenge those issues. They didn't tell him that the charge was based on the cup, right? No. But what it said was, it was that Mr. Jolly was found to be a risk to safety, a risk to good was a high security level inmate. The membership to the Aryan Brotherhood was noted there, but he was also found to be an escape risk, a willing participant in a potential agency racial war. He had planned an assault, had propensity for future disruptive acts, and was a significant threat to others. That is all in the appendix at pages 59 and 60 in the complaint that he attached. Wasn't there also some information about him committing a lot of murders that was part of his medical report? But isn't that unfounded? So it was part of the medical report, obviously, because we're on a motion to dismiss. We never got to investigate sort of where that came from. However, it was made by, I believe, his mental health therapist, his psychologist, psychiatrist, that he had conceded. I will note that report also does say that some of the information was from self-reporting. So presumably, Mr. Jolly proffered some information, whether it was about murders or not, unclear. Well, apparently, he challenges that, so I don't think that he would say that he did them. And he didn't worry about whether or not that was all considered as part of this as well. I think it could be, but, Your Honor, I would just point again to 59 and 60, where there's a list of different factors that were taken into consideration on the transfer decision. But the medical report is mentioned in the hearing report, I believe. It is mentioned, but even if we want to say that maybe it was erroneous or something like that, and we're obviously not conceding that it was, but the fact that he had engaged in behavior that shows an inability to function in a less restrictive correctional environment, that he was found to be an escapist, these are all different considerations from the issues that he's in this case, because he's alleging that this was all a predetermined outcome. So that allegation comes from his statement in the hearing, where he says, I was told that, you know, this is all a sham, sort of speak. I will note that nothing in that hearing report notes that he notes who said that. He could have been told. He also alleges that in his complaint. He alleges that in his complaint, certainly, but he doesn't say the source of that information. And that's the problem, right, is that it could be from a fellow prisoner or something like that. And understanding pro se litigants should be given deference, not disputing that. There is a threshold. Otherwise, we're going to start welcoming a litany of litigation in the District of Columbia over unfounded statements. I think there needs to be some factual dispute or some factual allegation, I should say, that says it came from somebody that's part of this process or something of the like. So back to, I believe, Judge Katz's was going down this line. I'm concerned about the re-evaluation process at ADX Florence. How often is the re-evaluation supposed to occur? Or do you consider that Mr. Jolly has already been re-evaluated and he's in this status? So, Your Honor, it's a great question. And I'll say it's not in the briefing. And if the Court would like, we're happy to submit a 28-J on this issue specifically. Mr. Jolly receives periodic reviews every six months. And my understanding of that process is that every six months, he has the opportunity to actually contest his designations and do all that. And that is just the process that's available to him. And how is he to know about that process? I believe it's publicly available. I believe it's also ADX Florence that has a report or a statement that informs inmates of that process. In other words, for a six-month evaluation, are you going to get a notification of some sort by paper that just says, okay, here's your re-evaluation period right now. You're designated as such. And here's what you can do to challenge that. So, Your Honor, I'll admit I don't know the minutiae of that. But I know there is a process. And what I recall is that it is a forum for inmates to raise objections to raise their issues at those six-month periodic program reviews. Unless there are any other questions on the Fifth Amendment, I just want to very quickly talk about the Eighth, which is that Mr. Jolly's challenge here is really to his transfer, not to any sort of medical issues that he's facing. I think all of that is confirmed by the relief that he seeks in the complaint, which is injunctive in the sense of get rid of my designation and potentially transfer me and nothing else. What about this circuit that we will be creating a circuit split with respect to the liberty interest and the solitary confinement that it may constitute a liberty interest, the fact that you would be in solitary confinement? So, I'll note that Mr. Jolly isn't in solitary confinement. He's in general population. I know my friend on the other side equates that to solitary confinement in the supermax context. But creating a circuit split, I mean, this court has said on at least a couple of occasions that it doesn't want to create circuit splits on issues and tries to avoid them as much as possible. I think in this case, where the facility is not within its jurisdiction, is not located here to create a circuit split with the tensor. It would be a tall order. Any further questions? No. Thank you so much. We ask the court to affirm. All right. We'll give you two minutes and rebuttal. Thank you, Your Honor. I'd like to start with the last thing my friend said, that he is, that Mr. Jolly is not currently in solitary confinement, but in the general population. General population at Addix Florence is the most restrictive level of confinement at Addix Florence. You can see that on their website. You can see that in Jolly's allegations. That is flat out incorrect. The fourth circuit and border easily rejected the exact same allegations there. And the key here is that all of the studies that we've been talking about, they examined the exact same conditions of confinement that, of course, Mr. Jolly is subject to. Complete sensory deprivation, Your Honor. Not just being stuck in a small cell. You're surrounded by gray walls. You have double steel doors that you can't even hear the other inmates speak. No opportunities for work. No opportunities for education. This is absolutely solitary confinement by any measure available. Going to Rezac, regardless of what Rezac decided and the fact that this court in IREF explicitly denied to apply the same approach that Rezac did, Rezac was decided on summary judgment. The court in that case denied the government's motion to dismiss. There is no possible circuit split here in any case imaginable. And finally, the fact that this case is not on summary judgment also goes to the due process allegations. I'll agree, as my colleague pointed out, that there are factual allegations on both sides here. But as the Fourth Circuit said in Thorpe, whether a given process is meaningful in practice is a question of fact to be decided on summary judgment. The Department of Corrections there also asked the court to take judicial notice of the procedures that are posted on the website, but the court declined to do that because the core allegation was that the prisoner did not, in fact, receive the process promised to him. On the Eighth Amendment claim with respect to subjective prong dealing with deliberate indifference, tell me about your view of the sufficiency of the allegations. Absolutely. Just as an initial matter, they have waived the argument because they present absolutely no argument to that in their response brief. And the First Circuit, Isentron, decided the case based on the exact same circumstance because the other party didn't brief it. They didn't even get to that prong at the motion to dismiss. However, the U.S. Supreme Court and Farmers said a fact finder may conclude that a prison official knew of substantial risk from the very fact that the risk was obvious. And the Third Circuit, the Fourth Circuit, the First Circuit have all said that risk is obvious based on the mountain of scientific evidence on all these recent court cases. And I will say one last thing. The BOP itself has recognized the obviousness of this risk because in their own manual, they require a mental health evaluation, Your Honor, before a prisoner can be sent to Florence. And they specifically say that currently diagnosed prisoners cannot be sent to Florence. So even they themselves have recognized that there's a substantial risk of mental health issues. Thank you. Thank you. Ms. Ellis, I'm having problems with your name. Can you please help? Of course, Your Honor. It's Alex Ava. Ms. Alex Ava, you were appointed by the court to represent the appellant in this case and the court thanks you for your very able assistance. We'll take the matter under advisement.
judges: Wilkins; Katsas; Childs